1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

RALPH DEITCH and JANET IMUS,
husband and wife,

                    Plaintiffs,

            v.

THE CITY OF OLYMPIA, et al.,

                    Defendants.

Case No. C06-5394RJB

ORDER ON PLAINTIFFS'
MOTION FOR
SUMMARY JUDGMENT

17

18

19

        This matter comes before the court on Plaintiffs' Motion and Memo in Support of Motion for
Summary Judgment. Dkt. 29. The court has considered the relevant documents and the remainder of the
file herein.

20

                                    PROCEDURAL HISTORY

21

22

23

24

25

26

27

28

        On July 18, 2006, plaintiffs Ralph Deitch and Janet Imus filed a civil action against the City of
Olympia, Olympia Police Department officers Cliff Maynard Jacob Brown, Olympia Police Department
sergeant Dan Smith, and Michelle Ashley-Cole.  Dkt. 1.  The complaint alleges (1) a cause of action under
42 U.S.C. § 1983 for violation of plaintiffs' Fourth, Fifth and Fourteenth amendments when defendants
illegally entered and remained in plaintiffs' home, searched and removed items from the home without a
warrant, and when officer Maynard seized Ms. Imus and restrained her from protecting her personal
property; (2) theft and conversion of plaintiffs' property; and (3) municipal liability on the part of the City
of Olympia. Dkt. 1. The claims stem from an event on August 16, 2005, in which officer Maynard and

1   Michelle Ashley-Cole, and latter Officer Brown and Sergeant Smith entered Mr. Deitch and Ms. Imus'
2   home to retrieve property of Mr. Deitch's sister, Andrea Deitch, aka Dolly Kazar or Dolly Khazar.

3                                    RELEVANT FACTS

4        At the time relevant to these proceedings, plaintiffs Ralph Deitch and Janet Imus, husband and wife,
5   resided in Olympia, Washington. Michelle Ashley-Cole lived a few doors away from plaintiffs. Andrea
6   Deitch, Mr. Deitch's sister, was a ward of the State of California from 1996 to 2002, as a result of mental
7   disorders. According to Mr. Deitch, Andrea Deitch is a chronic schizophrenic. Dkt. 31, at 1. In 2002,
8   Andrea Deitch came to live with plaintiffs in their daylight basement and paid them $350 a month from her
9   SSI income. Dkt. 31, at 3.

10       Defendant Michelle Ashley-Cole, a neighbor of plaintiffs, became acquainted with Andrea Deitch in
11  2003 or 2004. On July 11, 2004, Ms. Ashley-Cole contacted the police with a report that Ms. Imus was
12  screaming profanities at Andrea Deitch. On that same day, Detective Amy King contacted Ms. Imus and
13  Andrea Deitch, following a "disturbance call." Dkt. 41, at 4. Ms. King noted that Ms. Imus and Andrea
14  Deitch were involved in a verbal disturbance and there was no evidence of a physical disturbance. *Id.*

15       On May 16, 2005, Sherry Crisp, Andrea's mental health case manager at Behavioral
16  Health Resources (BHR), met with Andrea Deitch while plaintiffs were out of town. See Dkt. 51, at 1, 5.
17  Andrea Deitch made allegations against plaintiffs involving physical and mental abuse. Ms. Crisp reported
18  the alleged abuse to Adult Protective Services (APS). Dkt. 41, at 5. APS referred the investigation to the
19  Olympia Police Department where it was assigned to Detective Amy King.

20       On May 30, 2005, Ms. Ashley-Cole called 911, with a complaint of screaming and yelling coming
21  from an alley behind plaintiffs' house. Dkt. 32-3, at 8. Officer Maynard responded to the 911 call and
22  found Andrea Deitch and Ms. Imus in the alley. *Id.* He stated in his declaration that he separated them
23  and attempted to interview them. Dkt. 52, at 1. He talked with Andrea Deitch and Ms. Imus, following
24  which he wrote a report that indicated that he did not believe a crime had occurred. Dkt. 32-3, at 9. He
25  then went to talk with Ms. Ashley-Cole, who told him that it was common for her to hear Ms. Imus yelling
26  at Andrea Deitch and calling her names. *Id.*

27       Later that same afternoon, Officer Maynard was again dispatched to the area and was told to
28  contact Andrea Deitch at Ms. Ashley-Coles' house; dispatch had been told that Andrea Deitch had walked

up to Ms. Ashley-Coles' house and told Ms. Ashley-Cole that Ms. Imus had hit her. *Id.* Officer Maynard went to Ms. Ashley-Cole's house and spoke with Andrea Deitch about being slapped by Ms. Imus. *Id.* Officer Maynard then talked with Ms. Imus, who denied striking Andrea Deitch. Dkt. 32-3, at 10. He did not believe that he had probable cause at that time to arrest Ms. Imus for Assault DV [domestic violence]. *Id.* Officer Maynard reconnected with Andrea Deitch, who was at the Ashley-Cole Residence. Dkt. 52, at 2. He stated in his report that she was adamant that she did not want to go back to the house, and that she said she would rather be in a group home or someplace else. *Id.* Office Maynard put Andrea Deitch in contact with the Safeplace Shelter temporary emergency housing. *Id.* Ms. Ashley-Cole stated in her deposition that Office Maynard told her that "any time Andrea needed to go back and get her belongings to give him a call, and the police would stand by to keep the peace." Dkt. 43, at 3.

Ms. Ashley-Cole took Andrea Deitch to a hotel that afternoon, paid for with Safeplace vouchers, after she took some groceries from her own home for Andrea Deitch. *Id.* Andrea Deitch later moved to the Safeplace shelter itself. *Id.* Ms. Ashley-Cole visited Andrea Deitch at the shelter and gathered household items for her.

Ms. Ashley-Cole discussed with Ms. Crisp "what steps they were taking to get her permanent housing". Ms. Crisp and her husband went to Ms. Ashley-Cole's house with a trailer to collect items Ms. Ashley-Cole acquired for a new residence following Andrea Deitch's time at Safeplace.

On June 1, 2005, Mr. Deitch took Andrea Deitch's medications to BHR and retrieved Andrea Deitch's house and truck keys that BHR had obtained from Andrea Deitch. Dkt. 31, at 4.

On June 29, 2005, Detective King interviewed Andrea Deitch, Ms. Ashley-Cole, Sherry Crisp, Andrea Deitch's sister and mother, and Ms. Imus and her attorney Sax Rogers. Dkt. 51, at 9-14. Ms. King concluded that, "[a]lthough Andrea appears to be credible and has relayed the same information to everyone involved there is not enough evidence to meet the standards of probable cause." Dkt. 51, at 14.

In her declaration, Ms. Ashley-Cole stated that, in early August of 2005, Andrea Deitch asked Ms. Ashley-Cole to recover her clothing and personal belongings from her room at plaintiffs' house. Dkt. 43, at 3. On August 15, 2005, Ms. Ashley-Cole talked with Officer Maynard about Andrea Deitch's request. *Id.* Officer Maynard told her that the afternoon of August 16, 2005, would work best. *Id.*

Officer Maynard met Ms. Ashley-Cole and Andrea Deitch at plaintiffs' residence at about 3:30 pm

on August 16, 2005.  *Id.*  Although Officer Maynard notified them that they did not need to knock, Ms. Ashley-Cole stated that she knocked.  Andrea Deitch and Ms. Ashley-Cole entered plaintiff's house and went downstairs to the room that Andrea Deitch had occupied, put the clothes and personal items in plastic bags, carried them out of the house, and placed them in Ms.Ashley-Cole's car.  *Id.* at 3-4.  Later, Andrea Deitch discovered that they had inadvertently removed some costumes that were not hers; these items were returned to plaintiffs' residence.  *Id.* at 4.

Officer Maynard accompanied Andrea Deitch and Ms. Ashley-Cole to the residence; Officer Brown arrived later.  The facts related to what happened at plaintiffs' house are in dispute.

In her deposition, Ms. Imus stated that at about 4:00 pm on August 16, 2005, she was at home working on her computer when she saw Officer Maynard out her home office window, and that when she asked if she could help him, he responded: "No, that's all right.  We are getting what we need."  Dkt.30, at 6.  Ms. Imus stated that she went into the kitchen, where she saw Officer Maynard and Officer Brown.  *Id.*  She stated that she again asked if she could help them and Officer Maynard again said, "No, we are getting what we need."  *Id.*  Ms. Imus stated that she asked why they hadn't knocked and if they would please step outside while she dressed; that she saw Ms. Ashley-Cole coming up the stairs from the basement and asked who she was and what she was doing there; that she recognized several of the garments Ms. Ashley-Cole was carrying that were hers; that she told Ms. Ashley-Cole to stop; and that she moved toward the clothes she was removing to take the ones that belonged to her.  *Id.*  Ms. Imus stated that she asked if any of them had a court order or any papers giving them the right to come into her home, and Officer Maynard said they didn't need any papers.  *Id.* at 6-7.  Ms. Imus stated that she then remembered who Ms. Ashley-Cole was and realized she was probably there to get Andrea Deitch's clothes.  *Id.* at 7.  Ms. Imus stated that she asked to be able to inventory, or at least count, the garbage bags that were carried out of her basement.  *Id.* Ms. Imus stated that "[n]o one had mentioned Andrea's name before that, nor do I remember them ever saying Andrea's name the whole time they were in my home. I did not see Andrea in my house that day, nor do I believe she was there." *Id.*

Ms. Imus further stated as follows:

36.  I said, "You have no right to come in my house without even knocking," and "You can't remove things without a court order."  I then moved toward the door to get my things back when Officer Maynard grabbed me by the wrists, which were down at my sides.  As he grabbed my wrists he was touching my hips.  I became very aware that I was only wearing a cotton nightie.  Office

Maynard then physically backed me up into the refrigerator.  When I hit the refrigerator hard, his right hand went to his weapon on his belt and he began squeezing my right wrist with his left hand.

37.  I remembered to relax my arm as we were trained at the hospital when dealing with aggressive, controlling violence, and kept repeating, "Let go of my arm, let go of my arm", in a monotone as instructed.

38.  Officer Maynard was actually smiling giving me commands to stop interfering and to stay out of the way as he was squeezing my wrist tighter and tighter until I started to cry.  I have never felt so frightened in my life.  Then Officer Maynard threatened to put me in cuffs and take me to jail!

39.  When Officer Maynard backed me into the refrigerator, Officer Brown, who had been sitting at the counter on a barstool, stood up.  I would like to think he got up to protect me from Maynard's overreaction, but he didn't do anything to stop Officer Maynard nor did he say anything.

Dkt. 30, at 8.  Ms. Imus stated that she went upstairs to dress and got a photograph of her daughter and her dancing in the costumes that she had seen being taken from the basement, and that she showed the photograph to Officer Brown but that he made no attempt to explain, telling her that he was "just standing by." *Id*. at 9.  She stated that she repeatedly asked to see court papers giving them the right to enter her house and remove clothes; that no inventory of items taken was provided to her and that she tried to explain that the clothes were evidence related to a Nursing Commission complaint; that she was "crying, pleading hysterically for at least an inventory of what they were stealing;" that Ms. Ashley-Cole ignored her and would not make eye contact; that Officer Brown just shook his head; that Officer Maynard's reaction was to put his hand on his weapon again and "stand taller"; that she told them that Andrea Deitch had not lived in the home since May 30, had stopped paying rent, and had abandoned her belongings; that she showed them a copy of the Landlord Tenant Act and showed them where the law describes abandonment; and that no one would communicate with her. Dkt. 30, at 9-11.  Ms. Imus stated that she called her husband at work and described what was happening; that she called 911 to report a robbery in progress at her house, being committed by the police and a neighbor; that she answered a phone call but handed the phone to Officer Maynard because she has a hearing disability; and that Sergeant Dan Smith arrived at the scene but did not do anything to stop the other officers, would not listen to her or answer her questions, and would not give her an inventory until she "calmed down". *Id*. at 11-12.

Officer Maynard stated in his declaration that he confirmed with Andrea Deitch that she wanted to get her belongings and that she wanted him to be present for the purpose of keeping the peace. Dkt. 52, at 3.  Officer Maynard further stated as follows:

I asked her if she had vacated the 7th Avenue [plaintiffs'] house.  She said no, but she had been

staying at Safeplace.  I asked if the 7th Avenue house was still her address.  She said that it was.  I asked if she had been evicted or if there were any No Contact orders.  She said no. I asked if she had a key and she said she did.

Dkt. 52, at 3.

Officer Maynard stated that, while Andrea Deitch and Ms. Ashley-Cole went to the stairway that led to the basement, he waited outside on the patio; that Ms. Imus spoke to him through a window; that she asked what he was doing there; that he explained that he was standing by while Andrea Deitch retrieved her belongings; and that she appeared to be upset and left the window so he went to the threshold of the kitchen doorway.  *Id*.  Officer Maynard stated that shortly after he went into the kitchen, Ms. Imus entered from an adjoining room, very angry and upset, yelling loudly.  *Id.* at 4-5.  Officer Maynard stated that Ms. Imus yelled and cried, and that "any attempt at dialog with her was met with more yelling."  *Id*.  Officer Maynard stated as follows:

> At one point Janet Imus came at me and put her hands on me as if to push me out of the way.  I responded by grabbing each of her wrists and putting her hands down.  By training and experience I knew that kind of physical contact cannot be allowed.  I held her wrists, told her to calm down and firmly instructed her not to touch me again or I would be forced to arrest her.  In doing so, I did not intend to injure Ms. Imus or to cause her pain.  This was simply an effort to control her hands during the few seconds I said that.  This is the only time that I had physical contact with Ms. Imus.  Otherwise, my keep the peace efforts were limited to being there and keeping Ms. Imus away from Michelle and Andrea.

*Id.* at 5.

Officer Maynard stated that he contacted his supervisor, Sergeant Dan Smith, and requested that he respond to the scene, which he did.  *Id*.  After Andrea Deitch and Ms. Ashley-Cole had left the house, Officer Maynard, Officer Brown, and Sergeant Smith left the house and Officer Maynard stated that he briefed Sergeant Smith on what had occurred.  *Id.* at 6.

## LEGAL STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

<u>MOTION FOR SUMMARY JUDGMENT</u>

On June 12, 2007, plaintiffs filed a motion for summary judgment, contending that (1) *Frunz v. City of Tacoma*, 468 F.3d 1141 (2006) prohibits officers from entering a private residence without a warrant; (2) *Brier v. City of Lewiston*, 354 F.3d 1058 (9th Circ. 2004) provides that law enforcement officers who respond to a hearsay report of an alleged need for police action rely upon those unsubstantiated hearsay allegations at their peril; (3) both Ms. Ashley-Cole and Officer Maynard knew that Andrea Deitch had moved out of plaintiffs' house on May 30, 2005, eleven weeks before the incident; (4) Ms. Ashley-Cole and the officers acted under color of law because they acted together to gain entry into plaintiffs' home and remove items from the home; (5) the officers went far beyond the "keep the peace" function when they entered without knocking and inquiring, and when they restrained Ms. Imus; (6) defendants are not entitled to qualified immunity because plaintiffs' Fourth Amendment right to be free from unauthorized entry into their home was clearly established on August 16, 2005; and Officer Brown and Sergeant Smith are liable

1    because they ignored their affirmative duty to intercede on behalf of a citizen whose constitutional rights

2    were being violated in their presence; and (7) the City of Olympia is liable because the City failed to

3    conduct an investigation of plaintiffs' complaints, failed to discipline or take any action against officers

4    who violated plaintiffs' constitutional rights; and failed to adequately train the officers.  Dkt. 29.

5           The Olympia Police Department defendants, the City of Olympia, Cliff Maynard, Jacob Brown,

6    Dan Smith (City defendants) oppose the motion for summary judgment, contending that (1) the Olympia

7    Police Department does not have a policy that relates to the circumstances of this case because, as their

8    police practices expert maintains, most agencies do not have detailed directions on how to handle these

9    kinds of calls; (2) Officer Maynard did not file a written report regarding his use of force against Ms. Imus

10   because, as Chief Gary Michel testified in his deposition, a use of force report would be a judgment call in

11   a situation such as this; (3) Ms. Imus' phone call to Thurston County Central Dispatch during the incident,

12   Mr. Deitch's call to Sergeant Smith, and plaintiffs' attorney's contacts with Olympia police officers after

13   the incident do not qualify as complaints requiring investigation; (4) Olympia police officers receive

14   training regarding "keep the peace" activities; and (5) regarding plaintiffs' claim that defendants are not

15   entitled to qualified immunity, there are issues of material fact regarding whether Officer Maynard

16   reasonably believed Andrea Deitch had authority to consent to his entry; whether Officer Maynard acted

17   under color of law with regard to the "keep the peace" activity; whether Office Maynard's grabbing Ms.

18   Imus' wrists constituted excessive force; whether Officer Brown acted under color of law and whether he

19   violated Ms. Imus' rights when he did not intervene; and whether Sergeant Smith violated Ms. Imus'

20   rights.  Dkt. 49.  The City defendants also contend that there is no basis for a theft and conversion claim

21   because the items removed from plaintiffs' basement were the property of Andrea Deitch, with the

22   exception of some items that were inadvertently taken and were returned to plaintiffs.

23          Ms. Ashley-Cole opposes plaintiffs' motion for summary judgment, arguing that material issues of

24   fact exist as to whether the City defendants violated plaintiffs' Fourth Amendment rights, and whether Ms.

25   Ashley-Cole acted under color of law.  Dkt. 42.  Specifically, Ms. Ashley-Cole maintains that she entered

26   plaintiffs' house accompanied by and with the permission and at the request of Andrea Deitch.  *Id*. at 6.

27          In their reply, plaintiffs maintain that Ms. Ashley-Cole cannot rely on her statement that Andrea

28   Deitch invited her into plaintiffs' home because any such statement is inadmissible hearsay; Ms. Ashley-

Cole was jointly engaged with the police for purposes of state action; Ms. Ashley-Cole's attacks on Ms. Imus should be ignored or stricken; the City defendants' statement of facts is based upon hearsay and unwarranted attacks on Ms. Imus; qualified immunity is not available to defendants; and Officer Maynard acted under color of law because his actions went beyond keeping the peace. Dkt. 55.

<u>DISCUSSION</u>

**1. Civil Rights Claims**

Plaintiffs allege that defendants violated their Fourth, Fifth, and Fourteenth Amendment rights when they unlawfully entered plaintiffs' home and took items from their house.

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Under the Fifth Amendment, "No person shall be...deprived of life, liberty, or property, without due process of law." The Due Process clause of the Fourteenth Amendment provides that no person shall be deprived "of life, liberty or property without due process of law".

The court has carefully reviewed the record. There are many material issues of fact in dispute at this point, including whether Andrea Deitch had abandoned the premises at the time defendants entered plaintiffs' premises; whether Andrea Deitch had the right to enter plaintiffs' house, through the kitchen, to go down to the basement to retrieve her belongings; whether Andrea Deitch asked Ms. Ashley-Cole to accompany her; whether Officer Maynard reasonably believed that Andrea Deitch had authority to consent to his entry into the house; whether the officers went beyond "keep the peace activities"; whether Officer Maynard used excessive force when he grabbed Ms. Imus' wrists; whether Officer Brown violated Ms.

Imus' rights when he failed to intervene to stop Officer Maynard from grabbing Ms. Imus's wrists, and whether Sergeant Smith violated Ms. Imus' rights when he failed to stop the removal of items from the basement.  Although plaintiffs maintain that many of the statements defendants rely on are inadmissible hearsay, specifically statements defendants attributed to Andrea Deitch, the issues in this case center on why defendants believed that what they were doing was lawful, not necessarily the content of Ms. Deitch's statements.  Accordingly, because there are unresolved issues of material fact, plaintiffs' motion for summary judgment against the individual defendants should be denied.

The court notes that whether defendants violated plaintiffs' rights under the case law cited by plaintiffs, and whether defendants are entitled to qualified immunity, depends upon ultimate resolution of the disputed facts.

### 2.  Theft and Conversion

In the complaint, plaintiffs allege that defendants engaged in theft and conversion of their property. It appears that plaintiffs contend that, because Andrea Deitch had vacated the property, the items she left behind were abandoned and were therefore plaintiffs' property.  Further, plaintiffs apparently contend that their own property was taken by Ms. Ashley-Cole.  Defendants contend that Andrea Deitch and Ms. Ashley-Cole removed Andrea Deitch's belongings from  the basement, and that the few items removed that were not Andrea Deitch's were returned to plaintiffs.  There are outstanding issues of fact regarding whether defendants unlawfully took and converted plaintiffs' property.  Plaintiffs motion for summary judgment, to the extent that this issue is raised in their motion, should be denied.

### 3.  Municipal Liability

Plaintiffs contend that the City of Olympia failed to develop a policy regarding keep the peace activities, failed to document or investigate this incident, and failed to discipline, adequately train and supervise the officers involved.

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).  The municipal action must be the moving force behind the

1   injury of which plaintiff complains.  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S.

2   397, 405 (1997).

3          There are many outstanding issues of fact regarding whether the City of Olympia should be liable

4   for failing to develop a policy regarding "keep the peace activities" and whether the City failed to properly

5   investigate the incident.  Further, a decision regarding whether the officers involved were properly

6   disciplined, trained and supervised depends, in part, on the facts surrounding the entry of plaintiffs' home.

7   Those facts are in issue.  Plaintiffs' motion for summary judgment on municipal liability should be denied.

8          Therefore, it is hereby

9          **ORDERED** that Plaintiffs' Motion and Memo in Support of Motion for Summary Judgment (Dkt.

10  29) is **DENIED** .

11         The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

12  party appearing *pro se* at said party's last known address.

13         DATED this 9th day of July, 2007.

15                                          _Robert J. Bryan_

16                                          Robert J. Bryan
                                            United States District Judge

ORDER
Page - 11